**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION**

| | |
|---|---|
| Hirenkumar Govindlal Pandya and<br>Purvi Pravinkumar Joshi,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>Kenneth Cuccinelli, *as the Senior Official<br>Performing the Duties of the Director of<br>U.S. Citizenship and Immigration Services*,<br><br>　　　　　　Defendant. | Civil Action No.: 5:20-cv-01541-JMC<br><br><br><br><br>**ORDER AND OPINION** |

　　Currently before the court is Defendant Kenneth Cuccinelli's Motion to Dismiss for Lack of Jurisdiction. (ECF No. 6.) Plaintiffs Hirenkumar Govindlal Pandya and Purvi Pravinkumar Joshi filed a Brief in opposition to the Motion (ECF No. 9), to which Defendant filed a Reply (ECF No. 11). Also before the court is Plaintiffs' Motion to Expedite Discovery. (ECF No. 10.) Defendant filed a Brief opposing the Motion (ECF No. 14), to which Plaintiffs replied (ECF No. 15). For the following reasons, the court **GRANTS** in part and **DENIES** in part Defendant's Motion to Dismiss without prejudice (ECF No. 6), and **DENIES** Plaintiffs' Motion to Expedite Discovery without prejudice (ECF No. 10).

　　　　**I.　　RELEVANT FACTUAL AND PROCEDURAL BACKRGOUND**

　　Joshi and her husband Pandya are Indian citizens currently residing in South Carolina. (ECF No. 1 at 2 ¶¶ 1-2.) This case arises from their application for U Nonimmigrant Status ("U-Visa"). U-Visas are "set aside for victims of certain crimes who have suffered mental or physical abuse and are helpful to law enforcement or government officials in the investigation or prosecution of

1

criminal activity."[1] *Victims of Criminal Activity: U Nonimmigrant Status*, https://www.uscis.gov/humanitarian/victims-of-human-trafficking-and-other-crimes/victims-of-criminal-activity-u-nonimmigrant-status#:~:text=The%20U%20nonimmigrant%20status%20(Uor%20prosecution%20of%20criminal%20activity (last visited Dec. 12, 2020).

In support of his application for a U-Visa, Pandya claims he was feloniously assaulted in 2007 and 2012, reported the crimes to the Orangeburg County Sheriff's Department, and thereafter assisted in the criminal investigations. (ECF No. 1 at 9-10 ¶¶ 49-50.) In August 2017, Plaintiffs allege they submitted U-Visa applications,[2] requested work authorization on the face of the applications, and sought pre-waitlist work authorization based on the applications. (*Id.* at 10 ¶¶ 52-55.) Plaintiffs assert that "Defendant has taken no action on any of these applications from August 14, 2017, to date." (*Id.* ¶ 55.)

Plaintiffs allege United States Citizenship and Immigration Services ("USCIS") has unreasonably delayed determining whether they should be placed on the U-Visa waitlist (ECF No. 1 at 14-19 ¶¶ 86-134), and has relatedly unreasonably delayed or unlawfully withheld "pre-waiting list" employment authorizations under the Administrative Procedure Act, 5 U.S.C. § 706 (1966) ("APA") (ECF No. 1 at 11-13 ¶¶ 68-85). Plaintiffs further seek to disclose prior requests they sent to USCIS under the Freedom of Information Act, 5 U.S.C. § 552 (2016) ("FOIA")[3] (ECF No. 1 at

---

[1] Under the Federal Rules of Evidence, the court is permitted to "take judicial notice on its own[.]" FED. R. EVID. 201(c). Moreover, the court may take judicial notice of a fact "that is not subject to reasonable dispute" because it is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(1)-(2). The court has taken judicial notice of several facts and statistics throughout the Order from certain websites that the court deems pertinent to the instant matters.

[2] "Mr. Pandya filed an application for derivative U[-Visa] status on behalf of his wife, Purvi Pravinkumar Joshi[,] on August 14, 2017." (ECF No. 1 at 10 ¶ 54.)

[3] Plaintiffs conceded their FOIA claim during the motions hearing on December 15, 2020. (*See* ECF No. 20.)

19-20 ¶¶ 135-141), and ask for attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 (2019) ("EAJA") (ECF No. 1 at 20 ¶¶ 142-146).

Defendant subsequently filed the instant Motion to Dismiss, contending that "courts lack subject matter jurisdiction over APA claims that request review of matters committed to an agency's discretion" under Federal Rule of Civil Procedure 12(b)(1). (ECF No. 6 at 2.) Alternatively, Defendant posits that Plaintiffs have not stated a claim under Rule 12(b)(6). (*Id.* at 3.) As a consequence, Defendant requests the court deny fees and costs under the EAJA because Plaintiffs are not the prevailing parties in this action. (*Id.* at 4.)

## II.     LEGAL STANDARD

"Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Fredrick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999). A Rule 12(b)(1) motion for lack of subject matter jurisdiction raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. FED. R. CIV. P. 12(b)(1). In determining whether jurisdiction exists, the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted). The plaintiff bears the burden of proof on questions of subject matter jurisdiction. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th

3

Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

A Rule 12(b)(6) motion "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*citing Twombly*, 550 U.S. at 556). Courts commonly refer to this as the *Twombly/Iqbal* standard for federal pleadings, which a plaintiff needs to overcome to survive a Rule 12(b)(6) dismissal. *Brown-Thomas v. Hynie*, 412 F. Supp. 3d 600, 605 (D.C. 2019).

### III.     ANALYSIS

Defendant essentially seeks to dismiss Plaintiffs' claims regarding USCIS's pace of U-Visa waitlist adjudication and lack of a separate adjudication process to determine "pre-waitlist" eligibility under two theories: (1) the court lacks subject matter jurisdiction under Rule 12(b)(1); and (2), alternatively, Plaintiffs have failed to state a claim under Rule 12(b)(6).

A foreign national may only accept employment within the United States if they are a lawful permanent resident or "otherwise authorized" to be employed. 8 U.S.C. § 1324a(h)(3) (2004); 8 C.F.R. § 274a.12 (2020). U-Visa petitioners may be "otherwise authorized" for employment by obtaining an Employment Authorization Document ("EAD") in three circumstances during the U-Visa application process: (1) when issued a U-Visa; (2) if placed on the waitlist to receive a U-Visa (i.e., USCIS concludes a pending application is "approvable" but for Congress' limitation allowing only 10,000 U-Visas to be issued per year);[4] or (3) if, before being placed on the waitlist, USCIS determines the applicant has a "bona fide" pending application (also referred to as the "pre-waitlist"). (*See* ECF No. 6 at 5-11.) Yet USCIS has not implemented a separate program to determine pre-waitlist eligibility, despite Congress' mandate that USCIS "may" do so. (*Id.* at 9-11.) Thus options (1) and (2) above are currently the only means in which U-Visa applicants may obtain work authorization.

### A. Rule 12(b)(1) Subject Matter Jurisdiction

The APA states that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555 (1966) (emphasis added). "Moreover, § 706 of the APA states that the reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed." *Solis v. Cissna*, No. 9:18-CV-00083-MBS, 2018 WL 3819099, at *4 (D.S.C. Aug. 10, 2018) (citing 5 U.S.C. § 706(1)).

Yet the court's review of agency action is limited. The court may hear unreasonable delay claims against an agency only "so long as judicial review is not precluded by statute and agency

---

[4] USCIS retains discretion to grant work authorization for applicants placed on the waitlist but must authorize employment after issuing a U-Visa. *See* 8 U.S.C. § 1184(p)(3)(B) (2020); 8 C.F.R. § 214.14(d)(2) (2020).

5

action is not committed to agency discretion by law. *Solis*, 2018 WL 3819099, at *4 (citing 5 U.S.C. §§ 701-706; *Asheville Tobacco Bd. of Trade, Inc. v. Fed. Trade Comm'n*, 294 F.2d 619, 627 (4th Cir. 1961)); *see Gonzalez v. Cissna*, 364 F. Supp. 3d 579, 584 (E.D.N.C. 2019) (explaining courts "cannot review 'any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is *specified* under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security'") (citing 8 U.S.C. § 1252(a)(2)(B)(ii) (2005) (emphasis added)); *Patel v. Cissna*, 400 F. Supp. 3d 1373, 1379 (M.D. Ga. 2019) ("It is well established that judicial compulsion of agency action is limited to the enforcement of 'specific, unequivocal commands' that the agency had 'no discretion whatever' to deny." (citation and internal marks omitted)).

### *(1) Pace of U-Visa Waitlist Adjudication*

To start, the court finds it has subject matter jurisdiction over Plaintiffs' claim related to the pace of USCIS's U-Visa waitlist adjudication. Plaintiffs dispute whether such adjudication has occurred within a reasonable time. At the time the Complaint was filed, Plaintiffs' applications had been pending for approximately 32 months, and to date, there is no indication USCIS has taken any action. As has been noted in other courts, "although there is no statutory or regulatory deadline by which . . . [US]CIS must adjudicate an application, at some point, defendants' failure to take any action runs afoul of section 555(b). Were it otherwise . . . [US]CIS could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so." *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004); *Andrade Carranza v. Cuccinelli*, No. 2:19-CV-03078-BHH, 2020 WL 6292639, at *5 (D.S.C. Mar. 23, 2020), *report and recommendation adopted*, No. 2:19-CV-3078-BHH, 2020 WL 5810516 (D.S.C. Sept. 30, 2020) ("Because . . . USCIS has a nondiscretionary duty to determine a U-Visa petitioner's eligibility for the [w]aiting

[l]ist, most federal courts have concluded that claims alleging unreasonable delay in relation to such decisions are subject to judicial review." (compiling cases)); *Solis*, 2018 WL 3819099, at *5; *M.J.L. v. McAleenan*, 420 F. Supp. 3d 588, 595 (W.D. Tex. 2019) ("While . . . USCIS's decision to grant or deny a U[-]Visa petition is discretionary, the question of whether that adjudication has been unlawfully withheld or unreasonably delayed is not."); *see Alkassab v. Rodriguez*, No. 2:16-CV-1267-RMG, 2017 WL 1232428, at *5 (D.S.C. Apr. 3, 2017) (explaining "USCIS's compliance with the APA is not immune from judicial review" but ultimately finding the plaintiff's asylum claims had not been unreasonably delayed); *see also Calderon-Ramirez v. McCament*, 877 F.3d 272, 276 (7th Cir. 2017) (reaching the merits of the plaintiff's claim but determining his delay in U-Visa adjudication was not unreasonable).

As Plaintiffs "seek adjudication of their application within a reasonable time, the court has jurisdiction under the APA to hear Plaintiffs' claim" related to the pace of USCIS's U-Visa and waitlist adjudication. *Solis*, 2018 WL 3819099, at *5 (citations omitted).

   *(2) Lack of "Pre-Waitlist" Adjudication*

Next, however, the court finds it lacks subject matter jurisdiction over USCIS's lack of pre-waitlist adjudication. As explained above, before determining whether an individual has an "approvable" claim and thus is eligible for the U-Visa waitlist, USCIS has the option to provide work authorization to those eligible for a pre-waitlist, provided the applicant meets the purportedly less-stringent standard of having a "bona fide" application pending. 8 U.S.C. § 1184(p)(6). Specifically, the text of the statute reads that USCIS "*may* grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." 8 U.S.C. § 1184(p)(6) (emphasis added). This language is distinguishable from other parts of the same section, which repeatedly uses the phrase "shall." *Id.* ("The authorized period of

7

status of an alien as a nonimmigrant under section 1101(a)(15)(U) of this title *shall* be for a period of not more than 4 years, but *shall* be extended upon certification" from certain entities) (emphasis added).

The United States Court of Appeals for the Fourth Circuit has not opined on this issue, and there is a split among persuasive authorities whether the above language requires USCIS to adjudicate pre-waitlist work authorization. On the one hand, several cases have found such a requirement (and consequently that subject matter jurisdiction exists) because section 1184(p)(6) "contains no language specifying USCIS's use of discretion regarding the *timing* of granting an EAD."[5] *Andrade Carranza*, 2020 WL 6292639, at *7 (emphasis added) (citing *Solis v. Cissna*, No. 9:18-CV-00083-MBS, 2019 WL 8219790, at *9 (D.S.C. July 11, 2019) ("*Solis II*")). In other words, these cases concluded that, although the decision whether to grant pre-waitlist EAD is discretionary, the pace at which to do so is nondiscretionary. *See id.* Such reasoning fits squarely into Plaintiffs' argument that the use of "may" in section 1184(p)(6) simply conveys that Defendant has authority to decide *whether* to issue work authorization to an applicant after determining if the application is bona fide, but does not wholly absolve Defendant of its duty to *make* this decision. (ECF No. 9 at 3-13.) Some of these cases also point to the legislative history of section 1184(p)(6), noting at least two members of Congress conveyed that U-Visa applicants "should not have to wait for up to a year before they can support themselves and their families" with work authorization. *Id.* at 8 (citing *Solis II*, 2019 WL 8219790, at *9).

---

[5] Some of these cases highlight the fact that "8 C.F.R. § 274a.13(d) expressly required [USCIS] to render a decision on [EAD] applications within ninety days" for such applications filed before January 2017. *Andrade Carranza*, 2020 WL 6292639, at *7 (citation omitted). But as noted above, this guaranteed ninety-day window for EAD review was removed before Plaintiffs brought their applications. The regulation's removal over four years ago has spurred no Congressional action to implement any other pacing requirement for pre-waitlist adjudication.

8

And on the other hand, various courts have found USCIS has no duty to adjudicate pre-waitlist work authorization because section 1184(p)(6)'s use of the word "may" unequivocally demonstrates the discretionary nature of this decision. *Gonzalez*, 364 F. Supp. 3d at 584[6] (explaining 8 U.S.C. § 1184(p)(6) "clearly gives USCIS the *discretion* to grant work authorizations to aliens with pending, bona fide U-Visa applications[,]" which precludes judicial review for want of jurisdiction); *Uranga v. U.S. Citizenship & Immigration Servs.*, No. 20-CV-0521-ABJ, 2020 WL 5763633, at *8 (D.D.C. Sept. 28, 2020) (finding section 1184(p)(6)'s language—stating USCIS "may" grant EAD to those with pending bona fide applications—was "purely discretionary" and thus the court lacked jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii)); *Patel*, 400 F. Supp. 3d at 1379 ("Thus, it is clear that the Secretary could grant [the p]laintiff a work authorization if his application is bona fide. But, there is nothing in the language to suggest that he must."); *M.J.L.*, 420 F. Supp. 3d at 598 (explaining section 1186(p)'s "clear[] and unambiguous[]" language "gives USCIS the discretion to grant work authorizations to aliens with pending, bona fide U-Visa applications" and the court therefore "lack[ed] jurisdiction under 5 U.S.C. § 701(a)(2) and 8 U.S.C. § 1252(a)(2)(B)(ii)"). These cases support Defendant's contention that the word "may" decidedly shows USCIS has discretion to implement any such pre-waitlist adjudication program for EADs.

Here, the court finds it lacks subject matter jurisdiction over Plaintiffs' pre-waitlist claim because USCIS's decision to grant pre-waitlist work authorization is discretionary. The use of the word "may" in section 1184(p)(6) clearly allows, but does not require, USCIS to provide pre-waitlist work authorization to U-Visa applicants. The statute's language supports this

---

[6] *Gonzalez* remains pending on appeal before the Fourth Circuit. No. 19-1435, 364 F. Supp. 3d 579.

interpretation, as its use of the word "may" stands in stark contrast to the repeated use of the word "shall" elsewhere within section 1184(p)(6). Further, the fact this section does not mention the timing of a pre-waitlist decision does nothing to negate the statute's unambiguous grant of discretion to USCIS for pre-waitlist adjudication. "The text of the statute simply states that the Secretary 'may' provide work authorization, not that Defendants must adjudicate every petition to determine whether the petitioner would be eligible for work authorization." *Patel*, 400 F. Supp. 3d at 1380 (citations omitted).

Nor does section 1184(p)(6)'s apparent criterion of eligibility—"bona fide"—establish the court's jurisdiction by revealing a meaningful standard for this court to apply, as the court cannot discern Congress' intent behind the definition of this term. Tacitly acknowledging this lack of clarity, Plaintiffs attempt to craft a standard to determine when an application is bona fide: first, they point to Black's Law Dictionary, which they allege defines this term as "1. Made in good faith; without fraud or deceit. 2. Sincere; genuine." (ECF No. 9 at 5-6.) Second, they emphasize that USCIS has already defined "bona fide" in the context of T-Visa applications.[7] (*Id.*) And third, Plaintiffs insist that a U-Visa application may be considered bona fide when the applicant's referring law enforcement agency certifies it. (*Id.*) Yet, highlighting the ambiguity behind this term, Defendant observes Plaintiffs offer no less than three dissimilar definitions and standards. (ECF No. 11 at 7-8.) Defendant further stresses the regulatory definition of "bona fide" for T-Visas "reveals a complex and nuanced definition that stands in sharp contrast to the general Black's Law Dictionary definition."[8] (ECF No. 11 at 7-8 (citing 8 C.F.R. § 214.11(e)(1).)

---

[7] T-Visas are issued to victims of trafficking. *See* 8 C.F.R. § 214.11.

[8] For instance, a T-Visa application is "bona fide" if:

   (i) The application is properly filed and is complete;
  (ii) The application does not appear to be fraudulent;

The court agrees with Defendant that, in the context of U-Visa applications, the term "bona fide" does not reveal a meaningful applicable standard, and the court declines to simply pick a definition or standard to apply. Indeed, as one court has explained,

> [t]o follow [Plaintiffs'] rationale, the Court must make the dubious conclusion that Congress clearly intended for Defendants to adjudicate eligibility even though Congress did not specifically state what the single "eligibility" requirement, "bona fide," meant. It is not defined in the statute. It could mean that a superficial review of the application reveals that it is generally in order—that it is signed and does not appear fraudulent. Or it could mean that, if everything in it is true, then the person likely qualifies for a U[-]Visa, so it is bona fide. Or maybe it just means there is no obvious reason not to let the applicant work while waiting to get on the waiting list. The point is, we don't know what Congress meant by the phrase "bona fide" because they did not specify the eligibility requirement . . . . Congress'[] loose "eligibility" requirement here . . . is consistent with an intent to vest the Secretary with maximum discretion.

*Patel*, 400 F. Supp. 3d at 1380-81 (distinguishing *INS v. St. Cyr*, 533 U.S. 289 (2001)).

It is true that other courts have reached the opposite conclusion. For instance, recently in *Andrade Carranza v. Cuccinelli*, the court found it had subject matter jurisdiction over a pre-waitlist claim, and, choosing to apply the "generic definition" of bona fide, agreed with the plaintiffs in concluding "that the U Nonimmigrant Status Certification, which is executed by a

---

(iii) The application presents prima facie evidence of each eligibility requirement for T–1 nonimmigrant status;
(iv) Biometrics and background checks are complete; and
(v) The applicant is:
    (A) Admissible to the United States; or
    (B) Inadmissible to the United States based on a ground that may be waived (other than section 212(a)(4) of the Act); and either the applicant has filed a waiver of a ground of inadmissibility described in section 212(d)(13) of the Act concurrently with the application for T nonimmigrant status, or USCIS has already granted a waiver with respect to any ground of inadmissibility that applies to the applicant. USCIS may request further evidence from the applicant. All waivers are discretionary and require a request for waiver, on the form designated by USCIS.

8 C.F.R. § 214.11(e).

certified law enforcement agency and verifies the underlying reasons for the petition, is more than adequate to establish a 'bona fide' application for purposes of [section] 1184(p)(6)." 2020 WL 6292639, at *9; *see Solis II*, 2019 WL 8219790, at *10-11; *Rodriguez v. Nielsen*, No. 16-CV-7092-MKB, 2018 WL 4783977, at *11 (E.D.N.Y. Sep. 30, 2018). But there appears to be no indication that Congress intended for a U-Visa application to be "bona fide" only after the referring law enforcement agency certified the application. As discussed above, the court declines to simply choose the standard it finds most workable in the absence of at least some additional guidance.[9] *See Patel*, 400 F. Supp. 3d at 1382 ("The Court rejects [the p]laintiff's broad assertion that every statute providing eligibility requirements for a discretionary benefit, no matter how vague and undefined, mandates agency adjudication.").

As USCIS has discretion to award pre-waitlist work authorization, the court lacks subject matter jurisdiction over this claim. *See Gonzalez*, 364 F. Supp. 3d at 584. The pre-waitlist claim must therefore be dismissed without prejudice.[10]

---

[9] The court briefly examines other contentions raised by Plaintiffs. For one, the court observes that Congressional "floor statements by individual legislators rank among the least illuminating forms of legislative history." *See NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 943, 197 L. Ed. 2d 263 (2017) ("The text is clear, so we need not consider this extra-textual evidence."); *see Zucker v. Rodriguez*, 919 F.3d 649, 660 (1st Cir. 2019). And second, the court is unpersuaded that USCIS's purported "wholesale failure to explain an agency action is violative of the APA" in this instance, particularly as Plaintiffs' broad assertion seems more extensive than the precedent they cite for support. (ECF No. 9 at 5 (citing *ITServe All., Inc. v. Cissna*, 443 F. Supp. 3d 14, 43 (D.D.C. 2020), *appeal dismissed sub nom. ITServe All., Inc. v. Cuccinelli*, No. 20-5132, 2020 WL 3406588 (D.C. Cir. June 15, 2020) (examining whether a change in USCIS's decision-making process for visa applications was arbitrary and capricious).)

[10] As the court lacks subject matter jurisdiction, it must dismiss this claim without prejudice. *Bedi v. Grondin*, 51 F.3d 265 (4th Cir. 1995) ("[S]ince dismissal for lack of subject matter jurisdiction is not a decision on the merits, dismissal should be without prejudice."). Relatedly, the court may reconsider its ruling after the Fourth Circuit renders a decision in *Gonzalez*, No. 19-1435, 364 F. Supp. 3d 579.

### B. Rule 12(b)(6) Failure to State a Claim[11]

The court turns to examine whether Plaintiffs' remaining claim for an unreasonable delay in U-Visa waitlist adjudication fails to state a claim under Rule 12(b)(6). To state a claim for unreasonable delay, Plaintiffs need only allege "that an agency failed to take a *discrete* agency action that it is *required* to take."[12] *Solis*, 2018 WL 3819099, at *4 (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64, (2004)).

As Plaintiffs emphasize and Defendant acknowledges, "a number of courts have denied motions to dismiss for failure to state a claim, finding the pleadings sufficient in those cases to survive Rule 12(b)(6)" for claims substantially similar to those now before the court. (ECF No. 11 at 1.) *See e.g.*, *Camarena v. Cuccinelli*, No. 19-CV-5643-JZL, 2020 WL 550597, at *1-3 (N.D. Ill. Feb. 4, 2020); *Haus v. Nielsen*, No. 17-CV-4972-MFK, 2018 WL 1035870, at *3-4 (N.D. Ill. Feb.

---

[11] The court does not reach whether Plaintiffs have stated a claim for pre-waitlist adjudication because the court lacks subject matter jurisdiction over this claim.

[12] Courts generally use the factors outlined in *Telecommunications Research and Action Center v. F.C.C.* ("*TRAC* Factors") to determine whether an administrative delay is reasonable. 750 F.2d 70 (D.C. Cir. 1984). Yet the *TRAC* Factors require "a fact intensive inquiry," and courts have declined to apply this test "at the motion to dismiss stage and before discovery has been completed." *Andrade Carranza*, 2020 WL 6292639, at *6 (compiling cases); *see M.J.L.*, 420 F. Supp. 3d at 598 ("[A]t this stage of the case, the Court has insufficient information with which to evaluate these factors. Accordingly, the Court finds that it is premature to address these factors at the motion to dismiss stage and before discovery has been completed."). As alleged in the Complaint, the court "cannot find as a matter of law that" Defendant's over thirty month delay "in deciding whether to place Plaintiff[s] on the U[-]Visa waiting list was reasonable." *Patel*, 400 F. Supp. 3d at 1383-84 (explaining that, "even if Plaintiff[s] ha[ve] not sufficiently alleged" the fourth *TRAC* Factor regarding competing priorities, "the [c]ourt is unpersuaded that this factor (or the satisfaction of all six factors) is necessarily dispositive."). Nor does the court find that taking judicial notice of certain statements and statistics from USCIS's website would be sufficient to apply the *TRAC* Factors at this stage. Indeed, as highlighted by Plaintiffs, USCIS has acknowledged "a significant need for better, more accurate information" regarding visa application processing times, introducing a "pilot program" to address such concerns in 2018. *USCIS Launches Pilot Program for Processing Times*, https://content.govdelivery.com/accounts /USDHS/bulletins/1e6fcec (April 2018). Plaintiffs have likewise alleged that "USCIS's published processing times for U status adjudications are inaccurate." (ECF No. 1 at 14 ¶ 94.)

13

23, 2018); *Solis*, 2018 WL 3819099, at *4-5; *Perez v. Cissna*, No. 2:18-CV-00069-MBS, 2018 WL 5013857, at *4-5 (D.S.C. Oct. 15, 2018); *Berduo v. Cissna*, No. 9:18-CV-00082-MBS, 2018 WL 5013593, at *4-5 (D.S.C. Oct. 15, 2018); *Gutierrez v. Cissna*, No. 2:18-CV-00076-MBS, 2018 WL 5013642, at *4-5 (D.S.C. Oct. 15, 2018); *Martinez v. Cissna*, No. 2:18-CV-00077-MBS, 2018 WL 5013834, at *4-5 (D.S.C. Oct. 15, 2018); *Mata v. Cissna*, No. 2:18-CV-00073-MBS, 2018 WL 5013838, at *4-5 (D.S.C. Oct. 15, 2018); *Lopez v. Cissna*, No. 2:18-CV-00071-MBS, 2018 WL 5013830, at *4-5 (D.S.C. Oct. 15, 2018); *A.C.C.S., et al. v. Kirstjen M. Nielsen, et al.*, No. 18-CV-10759-DMG, 2019 WL 7841860, at *8-10 (C.D. Cal. Sept. 17, 2019); *M.J.L.*, 420 F. Supp. 3d at 597-98; *Patel*, 400 F. Supp. 3d at 1383-84; *Rodriguez*, 2018 WL 4783977, at *16-21; *but see, e.g., Gonzalez*, 364 F. Supp. 3d at 584-87.

Here, the court finds Plaintiffs' Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Specifically, Plaintiffs have alleged that Defendant is required to adjudicate U-Visa waitlist claims and failed to do so within a reasonable time. (*See* ECF No. 1 at 14-19.) Plaintiffs assert their applications have sat for well over thirty months without action, which the court finds is sufficient to state a claim. Moreover, Defendant's protestation that the delay is attributable to a lack of resources, without more, is insufficient at this stage to justify this delay and dismiss the case. *See Andrade Carranza*, 2020 WL 6292639, at *6 (explaining a "lack of resources alone is not a sufficient explanation for the delay") (citing *Solis II*, 2019 WL 8219790, at *14; *Camarena*, 2020 WL 550597, at *3). Accordingly, Plaintiffs have sufficiently stated a claim under Rule 12(b)(6). *See Andrade Carranza*, 2020 WL 6292639, at *7 (citing *Haus*, 2018 WL 1035870, at *1 ("That said, at this point the Court is dealing only with Haus's complaint; the government has not been called upon to offer any sort of explanation for the delay. Given these circumstances, the Court is not prepared to hold on a motion to dismiss for

14

failure to state a claim that the three-year delay in reviewing Haus's U visa petitions for placement on the waiting list is reasonable as a matter of law.")).[13]

### C. Pending Motion to Expedite Discovery

Lastly, the court denies Plaintiffs' Motion to Expedite Discovery. (ECF No. 10.) Plaintiffs state the court "should deny the Agency's motion [to dismiss] because, without a complete record or expedited discovery, the [c]ourt will not have the information necessary to engage in judicial review of the Agency's Rule 12(b)(6) motion." (ECF No. 9 at 14.) Plaintiffs further expound the Motion to Expedite Discovery was "a response to the Agency's overuse and misuse of Rule 12(b)(6) motions in delayed benefits cases. By filing motions to dismiss that create disputes of fact, rather than deal exclusively with the Plaintiffs' allegations, the Agency is inviting expedited discovery at the motion to dismiss stage." (ECF No. 15 at 5.)

The court denies Plaintiffs' Motion to Expedite Discovery for two reasons. First, the court dismissed the pre-waitlist claim based on a lack of subject matter jurisdiction. This analysis would remain unchanged even with a fully-developed evidentiary record. And second, Plaintiffs' remaining claims have survived, with a lack of discovery in this action being relevant to the court's analysis. This outcome has discarded the need for a "complete record or expedited discovery" before deciding the Motion to Dismiss, and, accordingly, Plaintiffs' Motion to Expedite Discovery is denied. (ECF No. 9 at 14.)

### IV.     CONCLUSION

For the foregoing reasons, the court **GRANTS** in part and **DENIES** in part Defendant's Motion to Dismiss for Lack of Jurisdiction without prejudice (ECF No. 6), and **DENIES** Plaintiffs'

---

[13] Consequently, Plaintiffs' EAJA claim related to the delay of waitlist adjudication survives as it remains to be seen whether Plaintiffs will amount to the prevailing parties in this action. *See* 28 U.S.C. § 2412(b).

15

Motion for Expedited Discovery without prejudice (ECF No. 10). Defendant has fourteen (14) days from the entry of this Order to file a responsive pleading in accordance with Federal Rule of Civil Procedure 12(a)(4)(A).

**IT IS SO ORDERED**.

*J. Michelle Childs*
United States District Judge

January 13, 2020
Columbia, South Carolina